OPINION
{¶ 1} Appellant, Jessica D., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of two minor children to *Page 2 
appellee, Butler County Department of Job and Family Services ("BCDJFS").
 {¶ 2} Appellant is the biological mother of two children, C.T. and T.T. The biological father of the children is not a party to this appeal. According to a referral from the Middletown Police Department ("MPD"), on June 14, 2004, the children, who at the time were two and three years old, had been left for hours in the care of an intoxicated acquaintance. MPD reported that the children were filthy and were running round the home without clothing. A BCDJFS caseworker noted that when she visited appellant's home, it was in "deplorable" condition with piles of garbage, toys, clothes, and dishes scattered throughout the home. The caseworker further noted that there was no appropriate children's clothing and very little food in the home. On June 16, 2004, BCDJFS filed complaints alleging that the children were neglected and dependent, and after an ex parte hearing, the juvenile court awarded BCDJFS emergency temporary custody of the children.
 {¶ 3} On December 10, 2004, the juvenile court adjudicated the children dependent. BCDJFS was awarded temporary custody and implemented a case plan which required appellant to maintain a safe and clean living environment for the children, participate in and complete an in-home service to address and resolve housekeeping concerns, complete a drug and alcohol assessment and maintain sobriety. The juvenile court ordered appellant to successfully complete an in-home parenting education program, and appellant was required to participate in the Substance Abuse Mental Illness ("SAMI") program at Comprehensive Counseling Center. Further, the juvenile court ordered that the children's father was not to be in contact with the children.
 {¶ 4} On September 15, 2005, the children were returned to the temporary custody of appellant. However, on February 6, 2006, a BCDJFS caseworker received notice that appellant tested positive for alcohol use, subsequently stopped attending SAMI program meetings, and ultimately was terminated from the program. On February 8, 2006, the *Page 3 
children were again removed from the home by MPD after a BCDJFS caseworker made an unannounced visit to the home and observed the father leave the home. The caseworker also observed that the home was unsafe for the children. On that date, after another ex parte hearing, the juvenile court awarded BCDJFS emergency temporary custody of the children.
 {¶ 5} On February 22, 2006, BCDJFS moved for permanent custody of the children, alleging that the children cannot be placed with either parent within a reasonable time, the children should not be placed with either parent, and that granting BCDJFS permanent custody of the children is in their best interest. The juvenile court reinstated the case plan, and emphasized that appellant was required to participate in treatment for mental health and substance abuse issues.
 {¶ 6} From July 20, 2006 through March 4, 2008, the juvenile court held a series of hearings on BCDJFS's permanent custody motion. On April 1, 2008, the juvenile court magistrate issued a decision granting BCDJFS's motion. Appellant objected to the magistrate's decision, and the juvenile court overruled the objections and adopted the magistrate's decision on June 26, 2008. Appellant appeals the juvenile court's decision, raising three assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "MOTHER WAS DENIED HER CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EFFECTIVE ASSISTANCE OF COUNSEL AND THE COURT PLAINLY ERRED WHEN IT PERMITTED MOTHER'S COUNSEL TO WITHDRAW WITHOUT A CONTINUANCE AND ALLOWED THE PERMANENT CUSTODY TRIAL TO PROCEED IN MOTHER'S ABSENCE WITHOUT COUNSEL TO PROTECT HER INTERESTS."
 {¶ 9} During the course of several hearings on BCDJFS's motion, appellant's counsel moved to withdraw as counsel, a motion which the juvenile court ultimately granted. *Page 4 
Appellant argues that based on counsel's withdrawal, she was denied the effective assistance of counsel.
 {¶ 10} Because parental rights involve a fundamental liberty interest, procedural due process, which includes the right to effective assistance of counsel, applies to permanent custody hearings. R.C. 2151.352; Juv. R. 4; In re Spillman, Clinton App. No. CA2002-06-028, 2003-Ohio-713, ¶ 8. In determining whether counsel's performance is deficient, an appellate court must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result.Strickland v. Washington (1984), 466 U.S. 668, 687-688, 694,104 S.Ct. 2052. In demonstrating prejudice, an appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance. Id. at 689.
 {¶ 11} According to the record, the permanent custody hearing took place over the course of eight dates ranging from July 20, 2006 to March 4, 2008, and appellant's counsel was present and represented her on six of those eight dates. Following a hearing on August 1, 2007, the juvenile court granted the children's guardian ad litem's ("GAL") motion for a continuance to give appellant further opportunity to comply completely with the case plan. In an order on August 28, 2007, the juvenile court magistrate stated, "it is in the children's best interest to again defer a final decision on the motion for permanent custody to give mother more time to demonstrate stability and consistency in case plan services. Mother needs to understand that this is the last extension the court will give her. She has six months to completely and consistently participate in mental health services, including taking all medication as prescribed, and to follow through with substance abuse treatment." (Emphasis sic.) *Page 5 
 {¶ 12} However, appellant failed to appear at the next hearing on February 25, 2008. At that time, appellant's counsel moved to withdraw counsel for appellant, which the juvenile court denied. Counsel then moved for a continuance, explaining that appellant allegedly had contracted an infectious disease and was told by her physician that she was highly contagious and could not be in public. Initially, the juvenile court denied counsel's motion, but ultimately continued the hearing for a week to allow appellant to recover or provide documentation from her physician stating that she could not be present, and to provide counsel the opportunity to explain to appellant that he would move to withdraw from representing her if she was unable to meet this requirement.
 {¶ 13} Again, appellant failed to appear at the rescheduled hearing on March 4, 2008. Counsel stated that after the hearing had been continued, he notified appellant and appellant's mother of the continuance by regular and certified mail, and also stated that if appellant was not present and failed to provide medical documentation from her physician to justify her absence, he would move to withdraw as counsel. Counsel further stated that the day before this hearing, appellant called his office to inform counsel that she would not be present because her physician had not cleared her to be in public until March 10. Appellant was reminded that she needed to provide documentation from her physician, but she failed to do so. Accordingly, the juvenile court granted counsel's motion to withdraw.
 {¶ 14} After reviewing the record, we find no deficiency in counsel's performance. Appellant had adequate notice of the dates and times of the hearings and of the requirement that she either appear at the hearings or provide medical documentation to excuse her absence. It was appellant's own failure to comply with this requirement that resulted in counsel's withdrawal. Appellant has also failed to explain what her counsel could have done at the final two hearings that would have changed the outcome of this case. Accordingly, we find that appellant was not denied the effective assistance of counsel. *Page 6 
 {¶ 15} Assignment of Error No. 2:
 {¶ 16} "THE COURT ERRED AS A MATTER OF FACT AND LAW AND ABUSED ITS DISCRETION WHEN IT FOUND TERMINATING THE PARENTAL RIGHTS OF APPELLANT TO BE IN THE CHILD'S BEST INTERESTS AND TERMINATED THE PARENTAL RIGHTS OF APPELLANT BECAUSE SUCH WAS NOT THE ONLY MEANS OF OBTAINING A LEGALLY SECURE PLACEMENT FOR THE CHILD AND/OR BECAUSE PERMANENT CUSTODY WAS NOT IN THE CHILD'S BEST INTERESTS."
 {¶ 17} Assignment of Error No. 3:
 {¶ 18} "THE COURT'S DECISION AND ORDER OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS AND THE EVIDENCE PRESENTED FAILED TO MEET THE REQUISITE CLEAR AND CONVINCING STANDARD."
 {¶ 19} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santosky v.Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388. An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. In re Starkey, 150 Ohio App.3d 612,2002-Ohio-6892, ¶ 16. A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. In re Rodgers
(2000), 138 Ohio App.3d 510, 520.
 {¶ 20} R.C. 2151.414(B) requires the juvenile court to apply a two-part test when terminating parental rights and awarding permanent custody to a children services agency. Specifically, the court must find that: (1) the grant of permanent custody to the agency is in *Page 7 
the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D); and, (2) any of the following apply: the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; the child is abandoned; the child is orphaned; or the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a), (b), (c) and (d); In re Schaefer, 111 Ohio St.3d 498,2006-Ohio-5513, ¶ 31-36; In re Ebenschweiger, Butler App. No. CA2003-04-080, 2003-Ohio-5990, ¶ 9.
 {¶ 21} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that the children are dependent and had been in the temporary custody of BCDJFS for more than 12 months of a consecutive 22-month period as of the date BCDJFS filed the permanent custody motion. However, appellant does dispute the juvenile court's findings that the children's' need for legally secure permanent placement cannot be achieved without granting BCDJFS's motion for permanent custody, that appellant has failed continuously and repeatedly to substantially remedy the conditions causing removal of the children, and that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent.
 {¶ 22} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:
 {¶ 23} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 24} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 25} "(3) The custodial history of the child, including whether the child has been in *Page 8 
the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 26} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 27} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 28} With respect to R.C. 2151.414(D)(1), the juvenile court found the children were in the temporary custody of BCDJFS from June 16, 2004 until September 15, 2005, and again from February 8, 2006 until the date of the decision on April 1, 2008. The court found that the children have resided in multiple foster homes since their removal and have only resided with appellant for approximately five months in the nearly four years since their initial removal. The court found that despite this, both children have a close relationship with appellant, and that appellant's visitations with the children are consistent. With respect to R.C. 2151.414(D)(2), the juvenile court found that both children advised the court, through their GAL, that they want to return to appellant. However, the GAL recommended that BCDJFS's motion for permanent custody be granted.
 {¶ 29} With respect to R.C. 2151.414(D)(3), the juvenile court found that both children had been in the temporary custody of BCDJFS for more than 12 months of a consecutive 22-month period preceding BCDJFS's motion for permanent custody.
 {¶ 30} With respect to R.C. 2151.414(D)(4), the juvenile court found that the children have been in the temporary custody of BCDJFS for over three years since they were initially removed from the home. The juvenile court found that despite numerous extensions, appellant made no progress in completing case plan services.
 {¶ 31} With respect to R.C. 2151.414(E)(1), the juvenile court found that appellant has *Page 9 
failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. The court noted that appellant has repeatedly been ordered to complete a substance abuse program and address her mental health issues, and has failed to do so.
 {¶ 32} With respect to R.C. 2151.414(E)(2), the juvenile court found that appellant suffers from chronic mental illness, chronic emotional illness, and chemical dependency so severe that she is unable to provide an adequate permanent home for the children at the present time or within one year.
 {¶ 33} According to the record, during the nearly four year duration of this case, appellant has failed to comply with case plan services designed to address her substance abuse and mental illness. Appellant was discharged from the Comprehensive Counseling SAMI program due to her failure to commit to completing the program and her failure to abstain from using drugs and alcohol while participating in the program. Further, appellant was discharged from the Next Right Thing substance abuse treatment program after failing to meet any of her treatment goals and failing to comply with the program. During her limited participation in this program, appellant tested positive cocaine, Xanex, and Vicoden.[1] Despite being diagnosed with bipolar disorder, polysubstance dependence, generalized anxiety disorder and borderline personality disorder, appellant has failed to consistently comply with the recommendations of mental health professionals, as evidenced by the incident in January 2008 when police found appellant, apparently under the influence of narcotics, standing in the street holding a large butcher knife. While appellant's love for her children is apparent and sincere, appellant simply has not made the necessary changes in her lifestyle that are necessary for her to provide a safe and secure home for her children, *Page 10 
despite begin given more than ample time to do so.
 {¶ 34} With respect to appellant's argument that the appropriate disposition in this case would have been a planned permanent living arrangement ("PPLA"), we remind appellant that the juvenile court was without authority to place the children in a PPLA, as BCDJFS did not file a motion requesting such a disposition. In re A.B.,110 Ohio St.3d 230, 2006-Ohio-4359, ¶ 37. Moreover, BCDJFS had no obligation to request such a disposition.
 {¶ 35} In finding that granting permanent custody of the children to BCDJFS is in the children's best interest, the juvenile court thoroughly analyzed the evidence and testimony from the permanent custody hearing, and its findings are supported by sufficient clear and convincing evidence. As an appellate court reviewing a decision granting permanent custody, we neither weigh the evidence nor assess the credibility of the witnesses, but instead determine whether there is sufficient clear and convincing evidence to support the juvenile court's decision. See In reDunn, Tuscarawas App. No. 2008AP030018, 2008-Ohio-3785.
 {¶ 36} Appellant's second and third assignments of error are overruled.
 {¶ 37} Judgment affirmed.
POWELL and RINGLAND, JJ., concur.
[1] Appellant failed to provide documentation that Xanex and Vicoden had been legally prescribed. *Page 1