[Cite as *In re K.L.*, 2013-Ohio-12.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| K.L. | : | CASE NO. CA2012-08-062 |
| | : | O P I N I O N<br>1/4/2013 |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2010JC4152

Matthew Faris, 40 South Third Street, Batavia, Ohio 45103, guardian ad litem

Suellen M. Brafford, 285 East Main Street, Batavia, Ohio 45103, for appellant, C.L.

Donald W. White, Clermont County Prosecuting Attorney, David H. Hoffmann, 123 North Third Street, Batavia, Ohio 45103, for appellee, Clermont County Department of Job and Family Services

**HENDRICKSON, P.J.**

{¶ 1} Appellant, the biological mother of K.L., appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to a children services agency.

{¶ 2}   On June 30, 2010, about one month after his birth, K.L. was removed from his home when the Clermont County Department of Job and Family Services filed a complaint alleging he was a dependent child.  The complaint alleged that in a prior case, appellant's two children had been removed from her home and eventually placed in the permanent custody of the agency.  The complaint also stated that the father's extensive criminal history raised concern for the agency.

{¶ 3}   K.L. was adjudicated a dependent child on July 27, 2010, and the agency was granted temporary custody.  A case plan was prepared for the parents with reunification as the goal.  The mother completed many aspects of the case plan, but the father's lack of progress remained an obstacle to reunification.  On January 12, 2011, the agency moved for permanent custody of K.L. on the basis that the child had been in temporary custody for 12 of 22 months, he could not be placed with either parent within a reasonable time, and permanent custody was in his best interest.

{¶ 4}   After the permanent custody hearing on May 4, 2011, the father surrendered custody of K.L. to the agency.  At the start of the hearing, mother requested a continuance on the basis that she had ended her relationship with the father and was in the process of trying to obtain housing.  The magistrate denied the motion, stating that the case had been pending for some time and that the mother could testify regarding her efforts to obtain housing.

{¶ 5}   At the hearing, the agency caseworker testified regarding the parents' progress on the case plan.  The caseworker stated that the case plan included a request for a psychological evaluation of both parents, which the father completed.  The psychologist's report indicated that the father has severe adult psychopathology and that he represents a risk to any child under his care or in close proximity.  The mother completed an evaluation in the previous case and her attorney advised her not to have the evaluation performed in this case.  The mother was involved in counseling as required by the case plan and although her

counselor left, was attempting to obtain a new counselor. The father did not complete any counseling. Employment was also a requirement of the case plan, and while the mother was employed at McDonald's during the case, the father did not obtain employment.

{¶ 6} The father was required to complete an anger management program. The caseworker testified that although the father finished the first phase of the program, he "did not get good marks." The father was recommended for a more intensive second phase, but went to only one of the classes and did not return. In January 2011, while the case was pending, the father was arrested and pled guilty to domestic violence involving the mother. The caseworker testified that she observed demeaning and verbally abusive behavior from the father toward the mother throughout her involvement in the case. The caseworker stated that in spite of this treatment, the mother says the father is the love of her life and she wants to be with him. The caseworker expressed concern that the mother was unable to keep away from the father and concern for the safety of the child based on the father's anger issues.

{¶ 7} The caseworker also testified that housing was a concern throughout the case. At the start of the case, the parents were living in a trailer park with only the mother's name on the lease. Because of issues involving the father, the trailer park manager banned the father from the trailer park. The parents then rented a home, but were evicted in October 2011, after living there less than a year. In January 2012, the mother rented a sleeping room in a house with a common area for residents. The father told the caseworker he was living with friends. However, the sleeping room landlord testified at the permanent custody hearing that about one week after renting the room to the mother, he found out that the father was staying there too. He testified that although they do not usually rent rooms to two people, a deal was worked out where the mother was charged an extra $10 and the father was allowed to stay. In March 2012, the landlord had an altercation with the father in the common room.

The landlord testified that he was in the common room, discussing the past due rent with the mother, when the father came out of the sleeping room with a gun in one hand and a knife in the other hand and threatened him. The landlord called police and the father was arrested. At the time of the hearing, the mother was living in a homeless shelter and the father reported to the caseworker that he was living "here and there" with friends.

{¶ 8} According to the caseworker, the barriers to reunification were the mother's attachment to the father, along with her feelings of self-worth, safety issues for the child and a concern that the mother would not be able to protect the child because she cannot protect herself. Based on her involvement and the agency's history with the mother, the caseworker also expressed concern that even if the father was not involved, the mother would be involved with someone similar. She stated that she did not believe the mother would stay away from the father based on history and also based on what the mother has shown and said throughout the case. She discussed the sleeping room situation and stated that during this time, the mother said the father was not in her life, but evidence indicated otherwise. The caseworker further stated that even if the father were truly out of the picture, she would still have concerns, based on the previous case that led to a permanent custody award of the mother's other two children to the state. She indicated that even though the mother's interaction with K.L. is good, the interaction is based on very limited visits and concerns exist regarding the mother's ability to parent full-time with older children because of the previous case. The issue of stable housing was also a concern and the caseworker questioned whether the mother could not only find, but also maintain housing.

{¶ 9} Appellant testified at the hearing that she had K.L. for a month before he was removed from her home. She stated that she is living in a homeless shelter and is looking for a home, but does not have a time frame for obtaining housing. She testified that she and the father separated December 8, 2011, and he was not living with her in the sleeping room, but

- 4 -

just stopped by occasionally. She admitted that she still sees the father, and has taken him to court hearings after they separated and that she was taking him home after the permanent custody hearing.

{¶ 10} The foster father testified that K.L. is 23 months old and has been with the foster father and his wife since the child was removed from appellant's home. The foster father testified that K.L. is doing well in the home, and is bonded to both foster parents. He testified that they would like to adopt K.L. if that option becomes available. An adoption supervisor for the agency testified that if K.L. were to be adopted by his foster parents, she would anticipate an adoption could be finalized within four to six months.

{¶ 11} The magistrate issued a decision on May 11, 2011, granting permanent custody of K.L. to the agency. Objections to the magistrate's decision were overruled by the trial court on August 14, 2012.

{¶ 12} Appellant now appeals the trial court's decision granting permanent custody of K.L. to the agency. She raises a single assignment of error, arguing that the trial court erred in granting permanent custody to the agency. Within this assignment of error, appellant argues that the agency failed to make a reasonable effort to reunite the child with her after she separated from the child's father. She also argues that the court abused its discretion in failing to grant a continuance and in failing to take the father's relinquishment of his parental rights into consideration.

{¶ 13} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey,* 150

Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 14} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.,* 12th Dist. Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 15} The juvenile court found by clear and convincing evidence, and appellant does not dispute, that K.L had been in the temporary custody of BCDJFS for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody motion. The court also found that granting permanent custody of the K.L. to BCDJFS is in the child's best interest.

{¶ 16} On appeal, appellant argues that the agency failed to make reasonable efforts to reunify her with K.L. after she had separated from the father. She argues that she completed all of her case plan except finding housing which she was "in the process of doing." She contends that if the agency had made reasonable efforts, she would be reunited with her son.

{¶ 17} Except for a few narrowly defined statutory exceptions, R.C. 2151.419 requires a children's service agency to make reasonable efforts to reunify a family prior to the termination of parental rights.[1] *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶21. While the court is not required to make a reasonable efforts determination at a hearing on a motion for permanent custody, this finding must have been made at other stages of the child-custody proceeding. See *Id.* at ¶ 42. In this case, the trial court made reasonable efforts findings at hearings both prior to the hearing on the permanent custody motion and in its decision granting permanent custody.

{¶ 18} Appellant's argument, however, focuses on the lack of effort by the agency to provide reasonable efforts after she separated from the father. In determining whether the agency made reasonable efforts to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re K.M.*, 12th Dist. No. CA2004-02-052, 2004-Ohio-4152, ¶ 23. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. *Id.*

{¶ 19} According to appellant, she separated from the father in December 2011. At that point, the case had been pending for one and one-half years and the permanent custody motion was filed shortly after, on January 12, 2012. Nothing in the record indicates that appellant requested services after her separation from the father. Moreover, the caseworker testified that although appellant stated she was no longer in a relationship with the father, it did not appear the two had separated, and the evidence in the record supports her

---

1. Although prior to this case, the mother had two children removed from her home and her parental rights terminated, the court did not make a finding pursuant to R.C. 2151.419(A)(2)(e) that reasonable efforts were not required.

statement. The agency made efforts, in the form of a case plan, from the time of removal until the permanent custody motion was filed and, under the circumstances of this case, was not required to begin new efforts with appellant after she reportedly separated from the father 18 months into the case.

**{¶ 20}** Appellant also argues that the trial court abused its discretion in denying her request for a continuance. Appellant argues that the court denied her request for a continuance so that she could obtain housing, yet the court mentioned several times in its decision that appellant was homeless.

**{¶ 21}** At the start of the permanent custody hearing, appellant's counsel requested a continuance, stating that the mother had indicated she had housing she would be able to move into in a couple of weeks. Counsel stated that the mother wanted to be able to verify to the court that she had housing. The court denied the request, stating that the motion for permanent custody had been pending for some time and that the mother could testify regarding her housing situation.

**{¶ 22}** The decision to grant or deny a continuance is within the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65. Absent an abuse of discretion, a trial court's denial of a motion for a continuance will not be reversed. *Id.* In ruling on a motion for a continuance, the trial court balances the interest in controlling its docket and the efficiency of the judicial system with the possibility of prejudice to the movant. *In re R.S.,* 12th Dist. No. 2011-03-053, 2011-Ohio-4247, ¶ 16.

**{¶ 23}** In this case, appellant's request for a continuance was made on the morning of the May 4, 2012 hearing. K.L. was removed from the home and placed in temporary custody in June 2010. Under Ohio law, a child generally cannot be in the temporary custody of a children services agency for more than two years. *See In re A.F.,* 12th Dist. No. 2011-12-233, 2012-Ohio-2958. As of the date of the hearing, K.L. had been in agency custody for 22

months. Moreover, when the mother testified, she indicated that she had some leads on housing, but nothing definite, and she did not have a time frame for obtaining housing. In addition, maintaining stable housing was the goal, and a short continuance to allow the mother to obtain housing would not have established that the mother was able to maintain a stable home over time. Under the facts of this case, we find no abuse of discretion in the court's decision to deny the motion for a continuance.

{¶ 24} Finally, appellant argues that the court abused its discretion in failing to consider the father's relinquishment of his parental rights. She argues that for the majority of the case, the father was a hindrance to reunification, but she was never accused of neglect or abuse, was bonded to the child, and her interactions with the child were appropriate.

{¶ 25} The trial court's decision indicates that the court did consider the father's relinquishment of the child, as the surrender of parental rights is mentioned in the decision. However, as mentioned above, there is evidence that the mother's relationship with the father continued after she reported the two had separated. In addition, other factors remained a hindrance to reunification, including the mother's instability in relationships and housing.

{¶ 26} We find no merit to appellant's arguments that the court erred in granting permanent custody to the agency. Accordingly, appellant's assignment of error is overruled.

{¶ 27} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.