[Cite as *In re E.J.*, 2013-Ohio-4332.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | | CASE NOS. CA2013-04-037 |
| E.J. | : | CA2013-04-038 |
| | : | O P I N I O N |
| | | 9/30/2013 |
| | : | |
| | : | |

APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 12D000712

David P. Fornshell, Warren County Prosecuting Attorney, Michael Greer, 500 Justice Drive, Lebanon, Ohio 45036, for Warren County Children Services

Andrea G. Ostrowski, 25 East Central Avenue, Suite 4, Springboro, Ohio 45066, for appellant, T.S.

Jeffrey W. Stueve, 12 West South Street, Lebanon, Ohio 45036, for CASA

Jeffery E. Richards, 147 Miami Street, P.O. Box 536, Waynesville, Ohio 45068, for father, V.J.

**PIPER, J.**

{¶ 1} Appellant (Mother), the biological mother of E.J., appeals a decision of the Warren County Court of Common Pleas, Juvenile Division, granting temporary custody of E.J. to Warren County Children Services (the agency) and also denying Mother's request to

transfer the case to Michigan.[1]

{¶ 2} In June 2012, Mother was traveling from her home in Michigan to visit a friend in Columbus. However, Mother became lost when traveling on Interstate 75, and was pulled over by an Ohio State Highway Patrolman when other motorists reported that Mother was throwing objects from her car at passing vehicles. When the trooper approached the car, Mother drove off and led the trooper on a ten-minute police chase. Once Mother was finally apprehended in Franklin, the trooper found E.J. in the car wearing a urine-soaked diaper. Mother was highly incoherent, and as a result, was hospitalized in the psychiatric unit on a "72-hour hold." E.J. was taken into emergency shelter care by the agency and placed in a foster home because E.J.'s biological father (Father) was in drug rehabilitation center and remained unable to provide care for the child.

{¶ 3} A magistrate held a hearing on the agency's emergency custody motion, and granted temporary custody of E.J., who was approximately 20 months old at the time of the hearing, to the agency. The magistrate appointed separate attorneys to represent Mother and Father, and also ordered a Court Appointed Special Advocate (CASA) for the child. Mother, who was later released from the hospital, was arrested and charged with fleeing and eluding, as well as child endangering as a result of her fleeing from the trooper. Mother was incarcerated for a short time, and later pled not guilty by reason of insanity to the charges. Upon her release from jail, Mother returned to Michigan where she was staying at a domestic violence shelter. When Mother appeared for criminal hearings, or other court dates in Ohio related to the fleeing incident, she visited with E.J.

{¶ 4} Mother, through her appointed counsel, moved to transfer the case to Michigan, arguing that it was too difficult for her to visit with E.J. in Ohio and that Michigan was the

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

proper jurisdiction to promote reunification between herself and E.J. The agency argued against transferring the case, and asserted that Ohio held proper jurisdiction over the matter. The agency also began the process of placing E.J. with her paternal grandmother (Grandmother) in New Jersey, and was waiting on a final approved home study before transferring E.J. to Grandmother's care.

{¶ 5} E.J. had been placed with Grandmother on a prior occasion in 2011 after Mother had been pulled over by an officer and fled. Mother was charged with fleeing and endangering children after she abandoned one of her older daughters at a rest area, and fled police when they pulled Mother over. At the time Mother fled, E.J. and Mother's son were in the car. Mother's other children are now in the custody of their biological father. E.J. and Mother were reunified after E.J. was in Grandmother's care for approximately three to four months.

{¶ 6} The magistrate held a hearing and adjudicated E.J. dependent, and set the matter for a dispositional hearing. The magistrate heard arguments regarding Mother's motion to transfer, as well as the agency's request to maintain temporary custody of the child. The trial court denied Mother's motion to transfer the case and further ordered that the agency would maintain temporary custody of E.J. Mother then filed objections to the magistrate's decision, which the juvenile court overruled. After filing her objections, Mother was incarcerated in a Virginia jail for approximately 22 days for failing to appear for court hearings related to her 2011 fleeing and endangering charges. Once released from the Virginia jail, Mother returned to Michigan, where she has lived in three different residences since July 2012. During this time, Grandmother's home study received final approval, and the agency relocated E.J. to New Jersey to live with Grandmother. Mother now appeals the juvenile court's decision overruling her objections to the magistrate's decision, raising two assignments of error.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT'S DECISION OF GRANTING TEMPORARY CUSTODY TO CHILDREN SERVICES FOR THE DISPOSITION WAS IN ERROR.

{¶ 9} Mother argues in her first assignment of error that the juvenile court abused its discretion when determining that the agency made reasonable efforts to prevent the removal of E.J. from her home and in determining that it was in E.J.'s best interest to award temporary custody to the agency.

{¶ 10} An appellate court reviews a juvenile court's custody determination for an abuse of discretion. *In re Brown,* 142 Ohio App.3d 193, 198 (12th Dist.2001). An abuse of discretion constitutes more than an error of law or judgment; it requires a finding that the trial court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983). "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re J.M.,* 12th Dist. Warren No. CA2008-12-148, 2009-Ohio-4824, ¶ 17, quoting *Miller v. Miller,* 37 Ohio St.3d 71, 74 (1988).

{¶ 11} According to R.C. 2151.353(A)(2), "if a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition: commit the child to the temporary custody of a public children services agency * * *." "A juvenile court's custody determination under R.C. 2151.353 must be based on the best interest of the child." *In re K.B.,* 12th Dist. Butler No. CA2012-03-063, 2013-Ohio-858, ¶ 11. In order to determine the best interest of a child, R.C. 3109.04(F)(1) requires the juvenile court to consider all relevant factors. *In re M.M.,* 12th Dist. Fayette No. CA2010-12-034, 2011-Ohio-3913, ¶ 9. These factors include, but are not limited to: the wishes of the parents;

the child's interaction and interrelationship with his parents, siblings, and other persons who may significantly affect the child's best interest; the child's adjustment to home, school and community; the mental and physical health of all persons involved; and the likelihood that the caregiver would honor and facilitate or had honored and facilitated visitation and parenting time. *In re A.L.H.,* 12th Dist. Preble No. CA2010-02-004, 2010-Ohio-5425, ¶ 9.

{¶ 12} Regarding reasonable efforts, R.C. 2151.419(A)(1) states,

> Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

{¶ 13} "In determining whether the agency made reasonable efforts to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re K.L.*, 12th Dist. Clermont No. CA2012-08-062, 2013-Ohio-12, ¶ 18, citing *In re K. M.,* 12th Dist. Butler No. CA2004-02-052, 2004-Ohio-4152, ¶ 23. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. *In re K.L.*

at ¶ 18.

{¶ 14} The magistrate held a hearing, during which the court heard testimony regarding the circumstances surrounding E.J.'s removal from Mother's care, as well as Mother's ability to care for the child. Mother did not attend the hearing because she began a new job a few days before the hearing and was not permitted to miss work. However, the agency's ongoing caseworker, Taylor Mabry, testified and the magistrate had the CASA's report and other pertinent recommendations on which to base its decision.

{¶ 15} The magistrate heard evidence that E.J. had been removed from Mother's care once before because of a similar incident involving fleeing from police and endangering children. Mother continues to suffer from mental illness, and the magistrate heard evidence that Mother does not take her medication as prescribed and does not follow through on any long-term care. Mabry testified that Mother admits that she had post-traumatic disorder stemming from being the victim of domestic violence, but that Mother does not accept previous diagnosis by multiple doctors that Mother suffers from paranoia, manic depression, bipolar disorder, as well as schizophrenia. Mother's past criminal history has been linked to Mother's mental health issues, and would likely continue should Mother continue to not abide by her doctor's recommended treatment.

{¶ 16} The magistrate also heard evidence that Mother does not have stable housing fit for E.J. Marbry testified that when the agency first became involved with E.J., Mother was living in a domestic violence shelter in Michigan. Once Mother returned to Michigan after spending time in an Ohio county jail, she began residing in the basement of a friend's home. While Mother argues that the agency should have made strides to determine whether the basement was an adequate residence for Mother and E.J., Marbry testified that Mother told her that the basement was not an adequate home for E.J. and that Mother was striving to find alternate housing. While the record indicates that Mother secured employment, Mother

was employed for less than a week at the time of the hearing and the job was through a temporary employment agency. In addition to the temporary job, Mother receives a small amount of support from her parents as well as approximately $200 per month in unemployment benefits.

{¶ 17} The record also indicates that Father was unable to care for E.J. because he was participating in a drug rehabilitation program in the New York area. Because of the inability to place E.J. with Mother or with Father, the agency was making arrangements and did eventually place E.J. with Grandmother.

{¶ 18} While Mother argues that the agency failed to make reasonable efforts and that giving temporary custody of E.J. to the agency was not in the child's best interest, the record indicates otherwise. The agency did enough to satisfy the reasonableness standard under the statute, as the evidence demonstrated that neither Father nor Mother could care for E.J. The agency created a case plan, permitted visitation between E.J. and Mother, offered some financial assistance to Mother so that she could travel between Michigan and Ohio, and offered other services to address Mother's mental health issues. However, Mother's mental health issues remained a concern given her distrust of diagnosis and her unwillingness to abide by treatment plans. Also, Mother did not have sufficient housing, as she freely admitted to the agency, and the basement residence was inadequate to fulfill E.J.'s residency needs.

{¶ 19} For similar reasons, placing E.J. in the agency's temporary custody was in her best interest. While the record is clear that Mother wishes to have the child returned to her custody, the remaining factors weigh in favor of E.J. staying in agency custody, especially when considering that E.J. had adjusted well to the foster home, and to living with Grandmother.

{¶ 20} The record demonstrates that one of the main factors for consideration

centered on Mother's mental health issues and Mother's unwillingness to accept treatment for her issues. Mother's mental health issues resulted in multiple criminal charges, including two instances that involved child endangering. Mother's mental health issues also led to Mother's other children being taken from her custody, and to E.J.'s prior removal from her care.

{¶ 21} After reviewing the record, we find that the juvenile court properly overruled Mother's objections to the magistrate's finding that the agency made reasonable efforts and that placing E.J. in the agency's temporary custody was in the child's best interest. As such, Mother's first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED WHEN IT DENIED MOTHER'S MOTION TO TRANSFER THE CASE.

{¶ 24} Mother argues in her second assignment of error that the juvenile court erred when it overruled her motion to transfer the case to Michigan.

{¶ 25} The juvenile court declined to transfer the case, finding that Ohio was a convenient forum and that no other jurisdiction held proper jurisdiction. Mother's brief does not challenge the juvenile court's finding that Ohio held proper jurisdiction according to R.C. 3127.18 regarding temporary emergency jurisdiction or that a court in New Jersey declined to exercise jurisdiction. Instead, Mother argues that the juvenile court should have declined to exercise jurisdiction because Ohio is not a convenient forum.

{¶ 26} According to R.C. 3127.21,

> (A) A court of this state that has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more convenient forum. * * *
>
> (B) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose,

the court shall allow the parties to submit information and shall consider all relevant factors, including the following:

(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2) The length of time the child has resided outside this state;

(3) The distance between the court in this state and the court in the state that would assume jurisdiction;

(4) The relative financial circumstances of the parties;

(5) Any agreement of the parties as to which state should assume jurisdiction;

(6) The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8) The familiarity of the court of each state with the facts and issues in the pending litigation.

{¶ 27} Mother argues that Michigan is the more convenient forum in which to determine at what point E.J. may be returned to her custody. However, the record indicates that at the time of the hearing, E.J. had not lived in Michigan for any extended period of time, and that she had no connections with the state such as schooling, day-care or relatives. By the time the hearing occurred, E.J. had lived in Ohio for longer a period of time than she had in Michigan, and established connections in this state through her foster home and services provided by the agency.

{¶ 28} The court also noted that Michigan courts would not have a working knowledge of the facts surrounding E.J.'s involvement with the agency, nor would Michigan courts be familiar with the criminal proceedings because such events occurred in Ohio. Also, the agency has been an ongoing presence in E.J.'s life and is familiar with the issues facing

Mother. Therefore, the agency is well-equipped to "efficiently track Mother's progress" in areas related to her mental health issues and any strides made to attain stable employment and housing. The court further noted that a transfer to Michigan would delay any reunification strides, and that the court had all evidence necessary to resolve the case within the statutory time period.

{¶ 29} After reviewing the record, we find that the juvenile court properly declined to transfer the case to Michigan and properly overruled Mother's motion. Therefore, Mother's second assignment of error is overruled.

{¶ 30} Judgment affirmed.

RINGLAND, P.J., and S. POWELL, J., concur.