[Cite as *In re A.D.*, 2014-Ohio-5083.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


IN THE MATTER OF:                          :

    A.D., et al.                             :          CASE NO.   CA2014-06-014

                                             :          O P I N I O N
                                                        11/17/2014
                                             :

                                             :


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 13AND0772 and 13AND00773


Kristina M. Osterle, P.O. Box 314, Washington C.H., Ohio 43160, guardian ad litem

Jennifer J. Hitt, 63 North Main Street, Suite B, London, Ohio 43140, for appellant, M.S.

Jess C. Weade, Fayette County Prosecuting Attorney, 110 East Court Street, Washington C.H., Ohio 43160, for appellee, Fayette County Dept. of Job & Family Services


    **RINGLAND, P.J.**

    {¶ 1}   Appellant, the mother of A.D. and G.D. (Mother), appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of the two children to Fayette County Children Services (Agency).   For the reasons stated below, we affirm the decision of the juvenile court.

    {¶ 2}   Since August 2009, Mother has been serving a term of community control in

connection with her felony conviction for receiving stolen property. During that time, Mother has battled drug addiction, violated her probation, and served jail time. In 2011, the Agency received temporary custody of A.D. and G.D. for 11 months. At the close of the Agency's case, A.D. and G.D. were placed in the custody of their Father, who resides in Florida. While Father had custody of the children, Mother attended and completed an inpatient drug treatment program. In October 2013, Father relinquished custody of the children to Mother.

{¶ 3} Mother had custody of the children for approximately a month when she was arrested on November 5, 2013 for failing to report to her probation officer. Mother tested positive for marijuana, heroin, and cocaine and was incarcerated. On November 6, 2013, the Agency filed a motion for emergency temporary custody of A.D. and G.D., which the trial court granted that same day. The Agency also filed a complaint alleging that A.D. and G.D. were neglected and dependent children and sought permanent custody of the children. Thereafter, the juvenile court found that A.D. and G.D. are dependent children and it is in the children's best interest to remain in the temporary custody of the Agency pending disposition of the case.

{¶ 4} In December 2013, Mother's community control was revoked and she was sentenced to a six-month term of imprisonment. During this time, Mother's husband (Stepfather) was also incarcerated on drug-related charges. On December 12, 2013, the Agency filed a case plan to reunify Mother with A.D. and G.D. The case plan required Mother to remain drug free and complete drug and mental health treatment programs, attend parenting classes, and provide for the children's basic needs.

{¶ 5} On April 17, 2014, the juvenile court held a hearing regarding the Agency's request for permanent custody of A.D. and G.D. Father permanently surrendered his parental rights to the children. At the time of the hearing, Mother remained incarcerated but was scheduled to be released from prison in one week.

{¶ 6}   Jack Anders, the Chief Probation Officer for Fayette County Adult Probation Department, testified that Mother was placed on community control in 2009.   Anders explained that Mother struggled with an opiate addiction and, through the assistance of the Probation Department, participated in several outpatient and inpatient drug treatment programs.  Mother only completed one of the inpatient treatment programs.  During Mother's probation, she was jailed on numerous occasions for positive drug screens.  In June 2011, Mother was arrested for driving without a license when police found her asleep in her car at a stop sign.   Mother admitted she had been using narcotics and police found drug paraphernalia in her home.  Later, in September 2011, Mother received a probation violation for failing to report to her probation officer and failing to take a drug test.  As a result of this violation, Mother's probation was extended for another five years.  After this violation, Mother did not receive another probation violation but was placed in jail several times by her probation officer due to her drug issues.

{¶ 7}   Anders testified that in 2013, Mother attended and completed an inpatient drug treatment program.  Mother remained sober until the fall of 2013 when Anders found Mother with drug paraphernalia.  In November 2013, Mother was arrested for failing to report to her probation officer and failing to take a drug test.  Eventually, Mother's probation was revoked which led to her six-month jail sentence.

{¶ 8}   Margo Robinson, the Agency case worker assigned to the family, also testified regarding Mother's struggles with drug addiction.  Robinson explained that Mother does not have a driver's license, has not been employed since 2011, is married to Stepfather who also struggles with substance abuse, lives off Stepfather's disability check, and had not arranged for suitable housing when she was released from jail.  Additionally, the Agency has concerns with Mother's mental health and there are allegations of violence between Mother and Stepfather.

{¶ 9}   Robinson explained that the Agency received temporary custody of the children in 2011 because there were concerns over Mother's drug use.  Father initially received custody of the children but agreed to relinquish custody to Mother after a year.  Subsequently, Mother relapsed, her probation was revoked, and the Agency again received temporary custody of the children.  Robinson testified that A.D. has used drugs, G.D. has cut herself, and both children are very angry with Mother and do not want to live with her anymore.  Father has agreed to terminate his parental rights.  The grandmother of the girls stated she would not take custody of the children until Mother's parental rights were terminated.  The Agency also contacted a cousin who was deemed inappropriate for placement.

{¶ 10} Lastly, Mother testified at the hearing that she was due to be released from jail in one week.  Upon release, Mother plans to live with her sponsor in Fayette County and the children can live in the sponsor's home as well.  Mother stated that while in jail she attended substance abuse meetings five days a week and that she underwent a mental health assessment and she was cleared.  Once she is released, Mother plans to end her relationship with Stepfather due to his history of drug abuse and to find employment.

{¶ 11} In an entry dated June 17, 2013, the juvenile court found by clear and convincing evidence that it was in the best interest of A.D. and G.D. to grant permanent custody to the Agency.  The court also found that the Agency had made reasonable efforts toward reunifying the family.

{¶ 12} Mother now appeals, asserting two assignments of error.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT [THE AGENCY] MADE REASONABLE EFFORTS TO MAKE IT POSSIBLE FOR THE MINOR CHILDREN TO RETURN HOME TO [MOTHER].

{¶ 15} Mother argues that the juvenile court erred in granting permanent custody to the Agency because the Agency had not made reasonable efforts to reunify the family. Mother maintains that the Agency should have given her more time to comply with the case plan because during the time the Agency had temporary custody of the children, she was incarcerated.

{¶ 16} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey*, 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers*, 138 Ohio App.3d 510, 520 (12th Dist.2000).

{¶ 17} Except for a few narrowly defined statutory exceptions, R.C. 2151.419 requires a children services agency to make reasonable efforts to reunify a family prior to the termination of parental rights. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 21. The children services agency shall have the burden of proving that it made those reasonable efforts. R.C. 2151.419(A)(1). While the court is not required to make a reasonable efforts determination at a hearing on a permanent custody motion, this finding must have been made at other stages of the child-custody proceeding. *In re C.F.* at ¶ 42. In this case, the juvenile court made reasonable efforts findings both prior to the hearing on the permanent custody motion and in its decision granting permanent custody.

{¶ 18} As this court has stated, "[i]n determining whether the agency made reasonable

efforts to prevent the removal of the child from the home, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." *In re K.L.*, 12th Dist. Clermont No. CA2012-08-062, 2013-Ohio-12, ¶ 18, citing *In re K. M.*, 12th Dist. Butler No. CA2004-02-052, 2004-Ohio-4152, ¶ 23. "Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible. *In re K.L.* at ¶ 18.

{¶ 19} Upon a review of the record, the Agency made reasonable efforts to reunify the children with Mother or other family members. The Agency has been involved with the family for several years and Mother has failed to remain drug free, provide for the children's basic needs, or provide a safe home for the children. Mother has participated in numerous drug treatment programs yet continues to relapse. Mother has failed to obtain employment and does not have a driver's license. She is married to Stepfather who struggles with drug addiction and was incarcerated at the time of the permanent custody hearing. Additionally, the children do not wish to live with Mother anymore and while in the custody of Mother, the children experimented with drugs and self-inflicted cutting. The Agency has also made reasonable efforts to reunify the children with other family members. Father has surrendered his parental rights to the children. The Agency contacted a cousin who was deemed inappropriate for placement and the children's maternal grandmother did not want custody until Mother's parental rights were terminated.

{¶ 20} While the current case plan was filed when Mother was incarcerated, the evidence demonstrated that the Agency has been involved with Mother and the children for years and the Agency has made reasonable efforts to reunify the family. Therefore, the juvenile court did not err in finding throughout the case that the Agency made reasonable efforts to reunite the children with their family.

{¶ 21} Mother's first assignment of error is overruled.

{¶ 22} Assignment of Error No. 2:

{¶ 23} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTEREST OF THE MINOR CHILDREN TO GRANT PERMANENT CUSTODY TO [THE AGENCY] WITHOUT EVALUATING THE LESS RESTRICTION [sic] OPTION OF PLANNED PERMANENT LIVING ARRANGEMENTS FOR THE MINOR CHILDREN.

{¶ 24} Mother argues that the juvenile court erred in finding that it was in the best interest of the children to grant permanent custody to the Agency. Specifically, Mother argues the Agency did not review the children's need for a legally secure permanent placement and whether that type of placement could have been achieved by a planned permanent living arrangement.

{¶ 25} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a)-(d); *In re E.B.*, 12th Dist. Warren Nos. CA2009-10-139 and CA2009-11-146, 2010-Ohio-1122, ¶ 22. Only one of those findings must be met for the second prong of the permanent custody test to be satisfied. *In re T.D.*, 12th Dist. Preble No. CA2009-01-002, 2009-Ohio-4680, ¶ 15.

{¶ 26} The juvenile court found by clear and convincing evidence that the children

cannot be placed with Mother or Father within a reasonable time and should not be placed with either parent. Father had permanently surrendered his parental rights for both children. The Court also found that the children could not be placed with Mother within a reasonable time because at the time of the hearing, Mother was due to be released from prison in one week; she had relapsed into drug use despite participating in numerous drug treatment programs; she had not sought employment since the Agency's involvement; she is married to Stepfather who was incarcerated and struggles with substance abuse; and she does not have suitable housing and is unable to meet the children's basic needs.

{¶ 27} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing, the court shall consider all relevant factors, including but not limited to:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶ 28} With respect to R.C. 2151.414(D)(1)(a), the juvenile court found the children have had no interaction with Mother for six months due to Mother's incarceration. Father

- 8 -

had custody of the children for a year but experienced considerable difficulty with the children in the home and agreed to return custody to Mother in the fall of 2013. During the case, Father permanently surrendered his rights to each child. With respect to R.C. 2151.414(D)(1)(b), the juvenile court found that both A.D. and G.D. are very angry with Mother and have expressed a desire not to have any contact with Mother. At the time of the hearing, the children were 16 years old and 14 years old.

{¶ 29} With respect to R.C. 2151.414(D)(1)(c), the juvenile court found that the Agency has had temporary custody of A.D. and G.D. twice in the past three years. The Agency received temporary custody of the children in both instances due to Mother's drug issues. With respect, to R.C. 2151.414(D)(1)(d), the juvenile court found that the children are in need of legally secure placement which Mother is unable to provide.

{¶ 30} In regards to Mother's argument that the appropriate disposition would have been a planned permanent living arrangement, we remind Mother that the juvenile court was without authority to place the children in a planned permanent living arrangement, as the Agency did not file a motion requesting such a disposition. *In re A.B.,* 110 Ohio St.3d 230, 2006-Ohio-4359, ¶ 37. Moreover, the Agency had no obligation to request such a disposition. *In re C.T.*, 12th Dist. Butler No. CA2008-07-180, 2009-Ohio-1037, ¶ 34.

{¶ 31} Based on consideration of the statutory factors, the juvenile court determined by clear and convincing evidence that it was in the best interest of A.D. and G.D. to grant permanent custody to the Agency. After careful review, we find the juvenile court's decision is supported by the evidence and it is in the best interest of the children to grant permanent custody to the Agency. The evidence establishes that the children cannot be placed with either parent within a reasonable time and should not be placed with either parent. Additionally, the evidence supports that granting permanent custody to the Agency is in the best interest of the children. Mother has struggled with drug addiction for years, had

- 9 -

completed several drug treatment programs yet continues to relapse, is married to a drug addict, and has failed to obtain employment. Both A.D. and G.D. expressed to the court that they do not wish to live with Mother anymore, A.D. has substance abuse problems, and G.D. has cut herself. Therefore, the juvenile court did not err in determining that it was in the best interest of the children to grant permanent custody to the Agency.

{¶ 32} Mother's second assignment of error is overruled

{¶ 33} Judgment affirmed.

S. POWELL and HENDRICKSON, JJ., concur.