[Cite as *In re T.P.*, 2016-Ohio-72.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| T.P., et al. | : | CASE NO. CA2015-08-164 |
| | : | O P I N I O N<br>1/11/2016 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2013-0203, JN2013-0204, JN2013-0205, JN2013-0206, JN2013-0207,
JN2013-05039

Marcelina Woods, 6644 San Mateo Drive, West Chester, Ohio 45069, guardian ad litem for T.P.

Jonathan W. Ford, Legal Aid Society of Southwest Ohio, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, guardian ad litem for M.P., E.B., J.S., J.S. III & L.S.

D. Joseph Auciello, Jr., 306 South Third Street, Hamilton, Ohio 45011, for appellant J.P. n.k.a. J.P.S.

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, J.P. n.k.a. J.P.S. (Mother), appeals the judgment of the

Butler County Common Pleas Court, Juvenile Division, granting permanent custody of her six

children to the Butler County Department of Job and Family Services (BCDJFS or "the agency"). For the reasons that follow, we affirm the judgment of the juvenile court.

{¶ 2} Between 2000 and 2005, Mother gave birth to three children who were fathered by three different men: T.P., who was fathered by F.G.; M.P., who was fathered by B.H.; and E.M.B., who was fathered by E.J.B. Between 2007 and 2013, Mother gave birth to three more children, J.S., J.S. III, and L.S., all of whom were fathered by J.S., Jr. It appears that at some point, Mother married J.S., Jr., since she uses his surname. However, J.S., Jr. is not a party to this appeal.

{¶ 3} Since 2002, Butler County Children's Services (BCCS), a department of BCDJFS, has had an extensive history with Mother, involving a number of concerns, including lack of ability to meet the children's basic needs, domestic violence, substance abuse, and mental health. In 2009, the five oldest children were temporarily removed from Mother's custody due to the concerns just mentioned, including her and J.S., Jr.'s substance abuse problems.[1] In 2011, the five oldest children were placed in the care of a nonrelative, Angela White, who was granted legal custody of the children in June 2012.

{¶ 4} In early April 2013, J.S., then five years old, was severely beaten by White. J.S. was taken to the hospital where it was discovered that the child had sustained head injuries and multiple bone fractures, and that some of the fractures were approximately ten days old. J.S. was hospitalized for two months. White was eventually charged with, and convicted of, felony child endangering, for which she was sentenced to four and one-half years in prison.

{¶ 5} On April 11, 2013, BCDJFS filed a complaint alleging that J.S. was an abused and dependent child and that T.P., M.P., E.M.B., and J.S. III were dependent children. The

---

1. The youngest of Mother's six children, L.S., had not yet been born at this time.

juvenile court ordered that the five children be removed from White's home and placed in the agency's temporary custody. The juvenile court further ordered that "no contact" occur between the children, White, Mother, and the children's fathers. The five children have been in foster care since April 11, 2013.

{¶ 6} Mother was initially granted supervised visitation with the children. However, on August 14, 2013, the juvenile court granted BCDJFS's request for an emergency ex parte order suspending Mother's visitation with the children. The agency requested that Mother's visitation be suspended based on the unanimous recommendation of the children's therapists who stated that as a result of Mother's visits, "the children have regressed in their functioning both emotionally and behaviorally." The children's therapists recommended that Mother's visitation with the children be suspended until both Mother and the children obtained therapeutic counseling to enable them to deal with the trauma the children had experienced and to help Mother develop and show "empathy" for the children. Visitation between Mother and her five oldest children was never resumed.

{¶ 7} On October 24, 2013, Mother gave birth to a sixth child, L.S. BCDJFS filed a complaint alleging that L.S. was a dependent child, and removed L.S. from Mother's home upon the child's birth. L.S. was soon returned to Mother following a shelter care hearing. However, several months later, the agency asked Mother and J.S., Jr. to submit to a random drug screen. When they did so, Mother tested positive for marijuana and J.S., Jr. tested positive for both marijuana and cocaine. On February 20, 2014, BCDJFS filed an amended complaint, alleging that L.S. was both an abused and neglected child. L.S. was again removed from Mother's home and placed in the agency's temporary custody. L.S. has been in foster care since February 20, 2014.

{¶ 8} On March 4, 2014, T.P., M.P., E.M.B., J.S. III, and L.S. were adjudicated dependent children by stipulation, and J.S. was adjudicated an abused and dependent child

by stipulation. There was also a stipulation that White was the perpetrator of J.S.'s abuse; that neither Mother nor J.S., Jr. were alleged to be perpetrators of J.S.'s abuse; and that there was no alleged perpetrator of the children's dependency. On July 22, 2014, BCDJFS moved for permanent custody of T.P., M.P., E.B., J.S., and J.S. III. On October 13, 2014, the agency moved for permanent custody of L.S.

{¶ 9} A permanent custody hearing was held on March 2 and 16, 2015. E.M.B.'s father, E.J.B., executed a permanent-surrender-of-child form in open court on March 2, 2015, after having been fully advised of his rights. None of the other fathers, including J.S., Jr., appeared in the matter, and thus were found to be in default. Mother also did not appear at the March 2, 2015 hearing, and thus was found in default. However, Mother did appear at the March 16, 2015 hearing for the cross-examination of the guardians ad litem.

{¶ 10} The magistrate recommended that BCDJFS be awarded permanent custody of all six children. Mother filed objections to the magistrate's decision. The juvenile court overruled the objections and adopted the magistrate's decision as the order of the court.

{¶ 11} Mother now appeals, raising the following assignments of error:

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE TRIAL COURT ERRED BY FINDING CLEAR AND CONVINCING EVIDENCE TO SUPPORT TRANSFER OF PERMANENT CUSTODY TO CHILDREN'S SERVICES CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT ERRED BY AWARDING PERMANENT CUSTODY TO THE STATE FINDING THE FACTORS OF R.C. 2151.414(B) & (D) PRESENT.

{¶ 16} Mother's assignments of error are closely related, and therefore we shall address them jointly.

{¶ 17} Mother argues the juvenile court's decision granting permanent custody of her

- 4 -

six children to BCDJFS was not supported by sufficient evidence and was contrary to the manifest weight of the evidence. We disagree with this argument.

{¶ 18} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer,* 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). "Clear and convincing evidence" is evidence that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re McCann,* 12th Dist. Clermont No. CA2003-02-017, 2004-Ohio-283, ¶ 11. Generally, an appellate court's review of a juvenile court's decision granting permanent custody is limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.,* 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. An appellate court will reverse a juvenile court's finding that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *Id.*

{¶ 19} Even if the juvenile court's judgment is sustained by *sufficient* evidence, an appellate court may nevertheless conclude that the judgment is against the manifest *weight* of the evidence. *Eastley v. Volkman,* 132 Ohio St.3d 328, 330-32, 2012-Ohio-2179, ¶ 12. "Weight of the evidence concerns the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis sic.) *Id.* at ¶ 12. In considering a claim that a judgment is against the manifest weight of the evidence, the reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Id.* at ¶ 20.

{¶ 20} In weighing the evidence, a reviewing court must be mindful of the presumption in favor of the finder of fact. *Id.* at ¶ 21. In determining whether a judgment is against the manifest weight of the evidence, "every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts." *Id.* "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Id.*

{¶ 21} R.C. 2151.414(B)(1) provides that a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re G.F.,* 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the court must find that granting the agency permanent custody is in the child's best interest, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.,* 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, the court must find that at least one of the five conditions set forth in R.C. 2151.414(B)(1)(a)-(e) applies. The five conditions include that the "child is abandoned," R.C. 2151.414(B)(1)(a), or the child has been in the temporary custody of a public children services agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d). Only one of the five conditions needs to be found to exist in order for the second prong of the permanent custody test to be satisfied. *In re A.W.,* 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 22} Here, the juvenile court found that the second prong of the test was met as to the five oldest children, because they have been in the agency's temporary custody since April 2013, and therefore, have been in the custody of a public children services agency for at least 12 months of a consecutive 22-month period preceding the filing of the motion for permanent custody. The juvenile court found that the second prong of the test was met as to the youngest child, L.S., because, even though L.S. had not been in the agency's custody for

12 months of a consecutive 22-month period preceding the filing of the motion for permanent custody, the evidence showed that L.S. had been "abandoned" by her parents as defined in R.C. 2151.011(C).[2] Specifically, the juvenile court found that L.S.'s parents had failed to visit or maintain contact with her from the end of April 2014 to October 2014, a period of more than 150 days that exceeds the 90-day period identified in R.C. 2151.011(C) that triggers a presumption that the child has been abandoned. There is clear and convincing evidence in the record to support both of these determinations.

{¶ 23} As to the first prong of the test for granting permanent custody, i.e., that it is in the child's best interest to grant the agency permanent custody, R.C. 2151.414(D)(1) provides that in determining the "best interest" of a child in a permanent custody hearing, a court must consider "all relevant factors," including, but not limited to the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 24} Here, the juvenile court thoroughly examined the evidence presented to

---

2. R.C. 2151.011(C) states that "[f]or the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."

determine the children's best interest, using the factors listed in R.C. 2151.414(D)(1)(a)-(e). As to the "interaction and interrelationship" factor in R.C. 2151.414(D)(1)(a), the juvenile court observed that the five oldest children have not lived with either Mother or their respective fathers since 2011. The court also found that neither Mother nor any of the fathers had visited with the children since August 2013, when visitation between Mother and the children was suspended.

{¶ 25} Additionally, the juvenile court noted that J.S. and L.S. have been placed in the same foster home and have bonded to each other and that their foster family is providing for all their needs. The juvenile court also found that M.P., E.M.B., and J.S. III have been placed in the same foster home, that they are doing well there, and that their needs are being met. The juvenile court concluded that, given the lack of recent contact between the children and their Mother and fathers over the last four years, there was very little, if any, bond or relationship between the children and their parents.

{¶ 26} As to the "wishes of the child" factor in R.C. 2151.414(D)(1)(b), the juvenile court observed that the children's guardians ad litem recommended that permanent custody be awarded to the agency. As to the "custodial history of the child" factor in R.C. 2151.414(D)(1)(c), the juvenile court again noted the length of time that the children have been outside of Mother's or their fathers' custody. As to the "child's need for a legally secure placement" factor in R.C. 2151.414(D)(1)(d), the juvenile court found that while all six of the children have a need for a legally secure placement, there was little likelihood that Mother would be able to successfully address her housing, income, substance abuse, mental health, and parenting issues, in order to reunite with her children.

{¶ 27} There is clear and convincing evidence in the record to support each of the juvenile court's "best interest" findings, and thus there is clear and convincing evidence in the record to support the juvenile court's determination that granting the agency permanent

custody is in the children's best interest.

{¶ 28} Mother argues BCDJFS failed to make "reasonable efforts" to reunify her with her six children. Specifically, she asserts that the agency failed to facilitate visitation between her and the children by failing to provide her with adequate transportation. She also asserts that she fulfilled the requirements of her case plan by, among other things, meeting with therapists and undergoing "intense outpatient services." She also contends that she moved out of Ohio "to make efforts" in order to comply with the case plan's requirement that she obtain suitable housing and employment.

{¶ 29} R.C. 2151.412 places a duty on a children services agency to prepare and maintain a case plan for children in temporary custody. *In re P.D.*, 12th Dist. Preble Nos. CA2015-02-008 and CA2015-03-010, 2015-Ohio-2829, ¶ 47. When examining whether a children services agency made reasonable efforts to reunify a family, the issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *Id.*, citing *In re A.D.,* 12th Dist. Fayette No. CA2014-06-014, 2014-Ohio-5083. "'Reasonable efforts' does not mean all available efforts; otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible." *In re P.D.*, citing *In re K.L.,* 12th Dist. Clermont No. CA2012-08-062, 2013-Ohio-12, ¶ 18.[3]

{¶ 30} Here, the agency developed a case plan for Mother in June 2013 that called for her to undergo substance abuse counseling and remain drug free and to maintain stable housing and employment. The agency directed Mother to a number of agencies that could help her meet these goals. The agency also provided assistance to Mother regarding her

---

3. R.C. 2151.419(A)(2)(d) provides that a juvenile court is not obligated to make a reasonable-efforts finding where the court finds the child abandoned and states that a reasonable-efforts finding is not necessary. Here, the juvenile court found that L.S. was abandoned, but the court did not make a finding that a reasonable-efforts finding was not necessary with respect to this child.

transportation needs by giving her gas cards and access to bus service. Mother did avail herself of some these services and completed parenting classes. However, Mother failed to show up for many individual counseling and therapy appointments, has failed to remain drug free, and has failed to show that she can obtain and maintain stable housing or employment. Mother had four years to address her issues, and the record shows that she has made little, if any, progress in resolving them.

{¶ 31} Most, if not all, of Mother's problems are of her own making. For instance, it was Mother's decision to leave this state and her children behind, first for Peoria, Illinois between June or July of 2012 to April 2013, and then leave again in June 2014 for Battle Creek, Michigan where she currently resides. These out-of-state moves have put a considerable distance between Mother and her children and have substantially decreased her ability to access resources from BCDJFS that would have helped her to resolve her issues and develop a relationship with her children. Mother contends that she had better opportunities to find housing and employment in Michigan than she did in this state. However, since Mother failed to attend the first day of the permanent custody hearing, she was unable to provide any testimony on this subject.

{¶ 32} Mother argues there was insufficient evidence to show that she abandoned her youngest child, L.S. She contends that she was present for hearings and repeatedly requested, but did not receive, assistance from the agency in obtaining transportation and having home studies of various family members performed so that they could be considered as possible placement options for her children. However, Mother fails to provide a persuasive argument as to why she was unable to visit or maintain contact with L.S. for more than 150 days between the end of April 2014 and October 2014 when she visited L.S. briefly when she was in town for a review hearing. This 150-day period in which Mother or J.S., Jr. failed to visit or maintain contact with L.S. exceeds the 90-day period in R.C. 2151.011(C)

thereby triggering the presumption of abandonment, and Mother has cited no evidence in the record showing that she should be deemed to have overcome that presumption.

{¶ 33} Mother argues the agency improperly recommended removal of L.S. based on her "failure of one drug test in February 2014." She asserts that "[t]he state's interest in the removal of a child for one failed urine screen wasn't compelling enough to warrant removal of [L.S.]," and that "the state did not appear to even consider the two and a half years of negative urine screens produced by [her]." However, the record shows that L.S. was removed from her parents' custody in February 2014, not simply because Mother tested positive for marijuana, but also because J.S., Jr. tested positive for both marijuana and cocaine at the same time.

{¶ 34} Furthermore, while Mother attempts to minimize her past history of drug abuse, the evidence in the record shows that Mother's children were removed from her briefly in 2009 when the child to whom she had just given birth tested positive for cocaine. The record also shows that Mother's children were again removed from her in 2011 because of her and J.S., Jr.'s substance abuse problems. Additionally, even though the agency required Mother and J.S., Jr. to submit to random drug screens, they both failed to comply with these requests on a number of occasions. In short, the evidence clearly and convincingly shows that Mother has not taken sufficient steps to deal with her substance abuse problem.

{¶ 35} Mother argues the juvenile court erred by not transferring the matter to a venue in Michigan, where she currently lives, and by not investigating the possible placement of some of the children with her cousin in Michigan, since Mother has family, and thus a greater support system, in that state. We find this argument unpersuasive.

{¶ 36} Shortly before the hearing on BCDJFS's motion for permanent custody, Mother filed a motion for legal custody on behalf of her cousin, Reiquisha Wilkes. However, Wilkes sought legal custody of only two of Mother's six children, J.S. and L.S. Further, Wilkes does

not have a relationship with either of these children, and we agree with the juvenile court that transitioning these children from their foster home to Wilkes' home in Michigan would be emotionally challenging for them and further extend the time needed for them to achieve permanency.

{¶ 37} In light of the foregoing, appellant's assignments of error are overruled.

{¶ 38} Judgment affirmed.

S. POWELL, P.J., and RINGLAND, J., concur.