[Cite as *In re S.B.*, 2018-Ohio-2143.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF:                          :

   S.B.                                  :   CASE NO. CA2018-01-015

             :     O P I N I O N
                   6/4/2018

             :

             :

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2015-0099

Jonathan Ford, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, guardian ad litem

Jeannine C. Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, for appellant, S.B.

Michael T. Gmoser, Butler County Prosecuting Attorney, John Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee, Butler County Children Services

**PIPER, J.**

{¶ 1} Appellant, S.B. ("Father"), appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, terminating his parental rights and granting permanent custody of his child, S.B., to the Butler County Department of Job and Family Services ("the

Agency").[1]

{¶ 2}   In May 2015, the Agency filed a complaint alleging that S.B. was a dependent child because he and his mother ("Mother") tested positive for marijuana at the time of his birth.  The Agency also made allegations regarding Mother's lack of interaction with the child and her failure to bond with the child, as well as Mother's history of drug usage.  The complaint also alleged that Father exhibited past and present violent and aggressive behavior.  The juvenile court held a shelter care hearing and granted temporary custody of the child to the Agency.

{¶ 3}   The juvenile court later held a hearing and adjudicated the child dependent. The Agency developed a case plan with the goal of reunification of the child with Mother and Father.   Father was asked to complete a psychological evaluation, substance abuse education, a domestic violence assessment, and to follow all recommendations that came from the evaluations.  Father was also required to submit to random drug screens, maintain stable housing and employment, and to complete in-home parenting education.

{¶ 4}   In February 2017, the Agency filed an emergency motion to terminate Father's visitation with the child.  The motion was based on an incident at a medical appointment during which Mother and Father fought and Father displayed aggressive behavior.  An Agency worker felt threatened when Father told her he had already gone to prison for shooting a person in the face.  The juvenile court suspended Father's visitation and Father never took the necessary steps to reinstitute visitation with the child.  The Agency then moved for permanent custody.

{¶ 5}   A magistrate held a four-day hearing, during which Father did not attend the first two hearing dates.  The magistrate heard evidence that Father did not complete the case

---

1. The child's mother did not appeal the grant of permanent custody to the Agency.

plan, he continually tested positive for drugs, he did not complete recommendations made after some evaluations, and Father continued to exhibit violent and aggressive behavior.

{¶ 6} The magistrate granted the Agency's motion for permanent custody and suggested terminating Mother and Father's parental rights. Both parties filed objections to the magistrate's decision, and such were considered by the trial court after a hearing on the matter. However, neither Mother nor Father attended the hearing. The trial court overruled all objections and adopted the magistrate's recommendations in full. Father now appeals the trial court's decision, raising the following assignments of error. For ease of discussion, and because the issues are interrelated, we will address Father's assignments of error together.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE TRIAL COURT'S DECISION AND ORDER GRANTING PERMANENT CUSTODY OF S.B. TO BUTLER COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AN ABUSE OF DISCRETION WHEN THERE WAS INSUFFICIENT CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE TRIAL COURT'S FINDINGS.

{¶ 9} Assignment of Error No. 2:

{¶ 10} THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE CHILD, S.B., TO BUTLER COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES AS IT IS NOT IN THE BEST INTEREST OF THE CHILD WHEN THE FAMILY IS BONDED AND FATHER CAN PROVIDE A LEGALLY SECURE PERMANENT HOME FOR THE CHILD.

{¶ 11} Father argues in his two assignments of error that the juvenile court erred in granting permanent custody to the Agency.

{¶ 12} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if the court makes findings pursuant

to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors set forth in R.C. 2151.414(D). The court is to consider the interaction and interrelationship of the child with those in the child's life, the wishes of the child, the custodial history of the child, the child's need for a secure permanent placement, and other statutory factors specific to the relations between the child and parent. R.C. 2151.414(D)(1).

{¶ 13} Second, the court must make a finding specific to the child's current custodial situation, such as whether the child has been abandoned, orphaned, or in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(b)-(d). Only one of the possible findings must be met to satisfy the second prong of the permanent custody test. *In re B.T.H.*, 12th Dist. Butler No. CA2017-06-080, 2017-Ohio-8358, ¶ 35.

{¶ 14} Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody explained above have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11. An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. This court will reverse a juvenile court's decision only if there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist. Butler No. CA2016-07-140, 2016-Ohio-7911, ¶ 10. However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 15}  In determining whether a lower court's decision is against the manifest weight of the evidence, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.  The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases.  *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25.  Therefore, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."  *Eastley* at ¶ 21.

{¶ 16}  The record clearly indicates, and Father does not contest, that S.B. has been in the custody of the Agency for more than 12 months of a consecutive 22-month period. Instead, Father argues that the juvenile court's decision is not supported by clear and convincing evidence where the weighing of the best interest factors was against the manifest weight of the evidence.  Specifically, Father argues that he completed many of the case plan objectives, he and the child are bonded, and he can provide care for the child.  However, a review of the entire record indicates that the juvenile court's decision is not against the manifest weight of the evidence and otherwise fulfills the legal requirements for granting permanent custody.

{¶ 17}  Regarding the child's interaction and relationships with those in his life, the record indicates that the child was born prematurely, tested positive for marijuana at his birth, and required treatment in the neonatal intensive care unit.  Upon discharge from the hospital, the child was removed from Mother and Father's care.  Father had supervised visits with the child until February 2017 when such visits were suspended.  The suspension of visitation

occurred after Father continually expressed anger toward others in front of the child. In particular, Father made statements regarding his prison sentence for shooting another person in the face, which was perceived by the parenting instructor who was supervising Father's visit with S.B. as a threat against her.

{¶ 18} Father was obligated to undergo a psychological and psychiatric assessment before he was permitted to resume visitation with the child. However, Father failed to complete the necessary assessments so that by the time of the hearing, Father had not been in contact with the child for eight months.

{¶ 19} The record also indicates that Father did not complete all necessary case plan objectives. For example, Father was to complete a domestic violence assessment and batterer's assessment given Mother's report of significant domestic violence. While Father participated in some of the assessments, he did not comport with the recommendations and objectives for treatment. Father continually minimized his aggression and hostility, and remained defensive throughout the assessment process. Father denied committing domestic violence against Mother even though he admitted to choking her. Father was also prescribed medication after his psychiatric evaluation, but refused to fill the prescription or make any strides toward combatting his mental health issues.

{¶ 20} The record is also replete with examples of Father's hostile behaviors, aggressive actions, and reference to his significant criminal history. An Agency caseworker testified that during a meeting with Father, his hostility was "very escalated" so that he was "actually hitting, like hitting on a table towards me and my supervisor at that time." Given Father's behavior at the meeting, a police deputy's presence was requested. Father was also aggressive with a worker at one of the child's medical appointments, to the point that Father "was in [the worker's] face and she felt unsafe and didn't feel that she could help the family any longer."

{¶ 21} Father admitted that he had been diagnosed with intermittent explosive disorder and antisocial personality disorder and that his criminal history included convictions for breaking and entering, attempted theft, and aggravated robbery. Father also testified that he spent ten years in prison for shooting someone in the face. Despite completing some of the case plan services meant to combat Father's issues, the magistrate specifically noted, "it is also significant to note that Father has displayed anger during a number of different times throughout this case, to a number of different providers, to such a degree that it has significantly impacted the willingness of service providers to work with him due to safety concerns."

{¶ 22} The record also indicates that Father failed to address his drug problem, and that he was discharged from or quit various programs meant to help him. Father refused to submit to drug screens on occasion, and tested positive for marijuana when he submitted to a drug screen before the hearing began. During Father's testimony at the hearing, he fully admitted to smoking marijuana throughout the pendency of the case.

{¶ 23} Father, while employed, had difficulty in his financial situation. His car was being repossessed, and he reported he was homeless, sleeping in his car periodically, and showering at friends' homes. At the time of the hearing, Father reported that he was staying with a family member.

{¶ 24} Conversely, the child has been in his foster home since birth and is strongly bonded with his foster family. The child is well cared for in the home by his foster mother, father, and siblings, and is an active member of the household. The foster family has been very supportive of the child, and is engaged in therapeutic actions with S.B. to help the child combat behavioral issues such as biting, slapping, and pinching himself and others. The foster mother testified that the family is bonded to the child and that the child is bonded with them. This testimony also included that the child calls his foster parents "Mommy" and

"Daddy."

{¶ 25} Regarding the child's wishes, the record indicates that the juvenile court did not hold an in camera interview with the child. However, the court considered the reports and recommendations from the child's guardian ad litem who recommended that the Agency be granted permanent custody.

{¶ 26} Regarding the custodial history of the child, the record indicates that the child was adjudicated dependent shortly after his birth and has been in the custody of the Agency since that time. At the time of the hearing, the child had been in the custody of the Agency for approximately 29 months.

{¶ 27} Regarding the child's need for a legally secure permanent placement, the juvenile court determined that it was "clear" that the child needed a secure permanent placement after having been in the Agency's care for 29 months. During this time, the child had been diagnosed with several physical and mental health issues. The child has oral motor feeding deficits, and will require ongoing monitoring and therapy so that food does not become aspirated into his lungs. The child has also been diagnosed with an unspecified intellectual disability and exhibits aggressive tantrums that require monitoring and intervention. The juvenile court noted the importance of continual support from the child's caregiver to provide the child with the necessary level of care and attention. However, the court determined that Father's inconsistent participation in his own case plan services cast doubt as to whether he could provide the necessary care to the child on a consistent daily basis.

{¶ 28} Conversely, the court found that the child had begun Parent Child Interaction Therapy with his foster family in 2017, and that S.B. is well cared for in the foster family's home. The foster family also expressed an interest in adopting the child should such an opportunity present itself.

**{¶ 29}** Regarding the other pertinent statutory factors, the court found that Father abandoned the child pursuant to R.C. 2151.011(C) by not having contact with the child for more than 90 days. The record indicates that Father's visitation with the child was suspended because of Father's mental health issues, displays of anger, and Father's aggression toward others while the child was present. Father never completed the necessary steps toward resuming visitation, and thus, had no contact with the child for over eight months.

**{¶ 30}** Additionally, the juvenile court determined that the child could not be placed with either parent within a reasonable amount of time and that according to R.C. 2151.414(E), Father had not remedied the conditions that required placement of the child with the foster family. In so finding, the trial court reiterated that Father had abandoned the child, and that the child had spent almost two and one-half years in foster care. The court also considered many of the facts addressed above regarding Father's failure to complete case plan objectives, aggression and hostility issues, denial of any problems, and refusal to address substance abuse issues. The court also noted Father's failure to complete the necessary steps to reinstitute visitation with the child, and Father's failure to secure stable housing. As such, the court made the specific finding that Father was unable to consistently parent the child and provide for his needs.

**{¶ 31}** Father also argues that S.B. could have been placed with the child's maternal grandmother or that other appropriate alternatives to permanent custody existed. However, the record is clear that no one had moved for custody of the child at the time of the hearing. Moreover, consideration of a family member as a viable custody option is not a statutory factor the trial court must weigh. Even so, the Agency expressed concerns regarding the grandmother having custody, such as her prior history with Children's Services regarding allegations of physical abuse, as well as the criminal history of the grandmother's boyfriend.

{¶ 32} After a thorough review of the record, we find that the juvenile court did not err in granting permanent custody of S.B. to the Agency. As such, Father's two assignments of error are overruled.

{¶ 33} Judgment affirmed.

S. POWELL, P.J., and HENDRICKSON, J., concur.