[Cite as *In re M.N.*, 2021-Ohio-4042.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2021-07-015 |
| M.N., et al. | : | O P I N I O N<br>11/15/2021 |
| | : | |
| | : | |
| | : | |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. AND20190694; AND20190695; AND20190696

Jess C. Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

Susan R. Wollsheid, for mother.

**M. POWELL, P.J.**

{¶ 1}  Appellant, the biological father of M.G. ("Father"), appeals from a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of his child to appellee, Fayette County Children Services ("FCCS").  For the reasons outlined below, we affirm the juvenile court's decision.

{¶ 2} On November 19, 2019, M.G.'s mother ("Mother") took her three-year-old stepdaughter ("L.G.") to Nationwide Children's Hospital due to injuries the child sustained while in Mother and Father's care. The record reflects that L.G. had bruising on her neck, face, head, and behind her ears. Both of her eyes were swollen shut. L.G. also had a torn perineal. Following their examination, medical staff determined that L.G.'s injuries were non-accidental and reported the matter to authorities.

{¶ 3} When L.G.'s mother learned that L.G. was in the hospital, she immediately went to pick up her other child, one-year-old ("A.G."), who had also been staying with Mother and Father. A.G. was later taken to Nationwide as well for a swollen and bruised right eye. He also had bite marks and bruises on his body. L.G. and A.G. were both admitted to Nationwide for further treatment.

{¶ 4} Because of the injuries, Nationwide ordered Mother to pick up her three biological children and return to the hospital immediately so they could be examined. FCCS responded to Mother's home along with law enforcement. At the house were six to eight adults, including a maternal great aunt, two teenagers, and three minor children: four-year-old M.N., two-year-old J.N., and one-month old M.G. None of the adults offered an explanation for how L.G. and A.G. had sustained their injuries. The caseworker inquired when M.G. had last been fed. Initially, nobody knew the answer. When the caseworker gave M.G. a bottle he "gulped" it down.

{¶ 5} On November 20, 2019, FCCS filed a complaint alleging that M.N., J.N., and M.G. were dependent and requesting emergency temporary custody. The juvenile court granted the order for temporary custody and the children were placed together in foster care.

{¶ 6} After M.N. began exhibiting aggressive behaviors, all three children were removed from their foster placement. The children were then placed in a second foster

home in December 2019.  Because M.N. continued to display aggression against J.N. and M.G., FCCS decided to place M.N. in a separate foster home.  J.N. and M.G. have remained in this second foster placement throughout the pendency of this case.

{¶ 7}    Meanwhile, Mother and Father were indicted on felony charges for child abuse.  Father pled guilty to endangering children and was sentenced to 36 months in prison.  Mother pled guilty to felonious assault and was sentenced to an indefinite prison term of four-to-six years.

{¶ 8}    On February 18, 2020, the juvenile court held an adjudicatory hearing.  During the hearing, the parties stipulated that the children were dependent children pursuant to R.C. 2151.04(C).  Therefore, the juvenile court adjudicated M.N., J.N., and M.G. as dependent children.  The juvenile court held a dispositional hearing on March 3, 2010. Following the hearing, the juvenile court found it was in the best interest of the children to remain in the temporary custody of FCCS.

{¶ 9}    While in the temporary custody of FCCS, M.N. and J.N. have received care for their substantial special needs.  At the time of removal, four-year-old M.N. had behavioral and aggression issues, and a severe attention disorder.  She was not potty-trained and was unable to use utensils when eating.  Two-year-old J.N. was still drinking from bottles and was nonverbal.  Both M.N. and J.N. have progressed since their placement in foster care. M.G., who was only one month old at the time of removal, exceeded his milestones while in foster care.  M.G. is currently walking, talking, and eating.  He is also well-bonded with his foster family.

{¶ 10} Due to incarceration, Mother and Father have not made any consequential progress toward completing their case plan goals.  M.N. and J.N.'s father has had little involvement in this case.  He did have a home study completed but failed due to the deplorable condition of his home, which reportedly had bug infestations, environmental

hazards and a wood burning barrel as the sole source of heat.

{¶ 11} On February 5, 2020, the children's maternal great aunt ("Aunt"), filed a motion for custody which was denied after a September 15, 2020, hearing. Aunt renewed her request for legal custody in a second motion filed on February 3, 2021. On February 11, 2021, FCCS moved for permanent custody of the children. The juvenile court held a hearing on both motions on May 7, 2021.

{¶ 12} During its case-in-chief, the state presented evidence from an FCCS caseworker and the children's guardian ad litem ("GAL"). The caseworker testified about the special needs of the two older children, M.N. and J.N., and that they had progressed in their foster care placements. M.N. has weekly counseling sessions and weekly speech therapy sessions. J.N. is still nonverbal but has started using very limited sign language. M.G., at 18-months old, continued to exceed his milestones.

{¶ 13} The state presented evidence concerning the case plans for Mother, Father, and for M.N. and J.N.'s father. The caseworker testified that Aunt and her husband were not considered for placement because they were residing at the home from which the children were removed. The caseworker also testified that Aunt is unemployed and has no income while her husband is working for Door Dash. Though the Aunt and her husband had recently moved to a new address, the agency expressed concerns about their ability to maintain that residence. The GAL also reported concerns that the Aunt did not have an approved home study. The Aunt and her husband purchased beds for the children and a highchair for M.G. but had little else to meet the children's needs.

{¶ 14} After taking the matter under advisement, the juvenile court granted FCCS's motion for permanent custody and denied Aunt's motion for legal custody. In so doing, the juvenile court determined that M.N., J.N., and M.G. had been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. The juvenile court

also determined that FCCS had proved by clear and convincing evidence that a grant of permanent custody was in the children's best interests and that an award of legal custody to Aunt was not in the children's best interest.

{¶ 15} Father now appeals from the juvenile court's decision with respect to his son, M.G.[1]

{¶ 16} Father's sole assignment of error:

{¶ 17} THE TRIAL COURT ERRED IN FINDING CLEAR AND CONVINCING EVIDENCE THE BEST INTEREST OF THE CHILD REQUIRED PERMANENT CUSTODY WITH FCCS (sic).

{¶ 18} In his sole assignment of error, Father argues the juvenile court's decision to grant permanent custody was not supported by clear and convincing evidence. Because Father's appeal concerns only M.G., we will limit discussion to M.G. and the juvenile court's decision with respect to him.

{¶ 19} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.B.*, 12th Dist. Butler Nos. CA2014-06-130 and CA2014-06-131, 2014-Ohio-5009, ¶ 6. This court will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented. *In re K.A.*, 12th Dist. Butler No.

---

1. No appeal was taken regarding M.N. and J.N.

CA2016-07-140, 2016-Ohio-7911, ¶ 10. However, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 20} In determining whether a juvenile court's decision is against the manifest weight of the evidence in a permanent custody case, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *Id.*, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. The presumption in weighing the evidence is in favor of the finder of fact, which we are especially mindful of in custody cases. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 thru CA2014-11-238, 2015-Ohio-1343, ¶ 25. Therefore, "[i]f the evidence is susceptible to more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment." *Eastley* at ¶ 21.

{¶ 21} Pursuant to R.C. 2151.414(B)(1), the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, pursuant to R.C. 2151.414(B)(1)(a) to (e), the juvenile court must find that any of the following apply: (1) the child is abandoned; (2) the child is orphaned; (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-

month period; (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent; or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶ 22} In this case, the juvenile court found M.G. had been in the temporary custody of FCCS for more than 12 months of a consecutive 22-month period at the time FCCS filed its motion for permanent custody. This finding is not disputed by Father and is supported by the record, as M.G. has been in the temporary custody of the agency since November 2019. Father instead disputes the juvenile court's decision finding that permanent custody of the children to the agency was in M.G.'s best interests.

{¶ 23} When considering the best interest of a child in a permanent custody hearing, the juvenile court is required under R.C. 2151.414(D)(1) to consider all relevant factors. This includes, but is not limited to, (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-town providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

{¶ 24} Initially, with respect to M.G.'s relevant interactions and relationships with

those who may significantly impact his young life, the juvenile court found that Mother and Father have had no interaction with M.G since they were sent to prison in December 2019 when the child was one month old. On the other hand, M.G. is bonded with his foster family who have expressed an interest in adopting him.

{¶ 25} In its consideration of R.C. 2151.414(D)(1)(b), the juvenile court stated that M.G. is too young to express his wishes to the court.

{¶ 26} With respect to R.C. 2151.414(D)(1)(c), the juvenile court reviewed M.G.'s custodial history and found that he had been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period.

{¶ 27} In considering R.C. 2151.414(D)(1)(d), the juvenile court found that M.G. needs a legally secure placement, that the agency can provide the necessary legally secure placement, and that such placement is the only way his needs can be achieved. The juvenile court also noted that Mother and Father are currently incarcerated and will not be able to provide any care for M.G. for at least 18 months.

{¶ 28} Based upon its consideration of the R.C. 2151.414(D)(1) factors, the juvenile court found by clear and convincing evidence that an award of permanent custody of M.G. to FCCS was in the child's best interest.

{¶ 29} On appeal, Father asserts that the evidence did not support the grant of permanent custody in favor of FCCS. Father requests that the grant of permanent custody be reversed and remanded for a new hearing on Aunt's motion for legal custody.

{¶ 30} We have carefully and thoroughly reviewed the evidence in this case and find that the juvenile court's determination that an award of permanent custody to FCCS is in the best interests of M.G. is supported by clear and convincing evidence and is not against the manifest weight of the evidence. As correctly determined by the trial court, Mother and Father are incarcerated for felonious assault and endangering children. They have not

interacted with M.G. since December 2019 when he was one month old.

{¶ 31} Throughout these proceedings, FCCS explored possible placements for M.G., but was unable to locate a suitable alternative arrangement. Aunt offered her home as an alternative placement and sought legal custody of all three children involved in this case. However, Aunt was a resident of the home in which L.G. and A.G. were found to have suffered physical abuse. M.N. and J.N., whose developmental delays suggest severe neglect, were also residing in the home. Nonetheless, Aunt did not believe there was anything wrong with the children's care, or demonstrate an ability to appreciate and care for the needs of any of the children. Aunt does not drive and has no income. Her husband, who she was recently separated from, has struggled to maintain employment and currently works for Door Dash making inconsistent income. The agency had rightful concerns about their financial ability to maintain their residence. Furthermore, Aunt regularly communicates with Mother and there are substantial concerns that she would allow Mother and Father to be in contact with the children once they are released from prison.

{¶ 32} In denying Aunt's motion for legal custody, the juvenile court considered the various R.C. 3109.04(F)(1) best interest factors applicable to custody determination and found that an award of legal custody to Aunt would not serve the children's best interest. The factual findings made by the juvenile court in this regard are supported by the record. Additionally, and as discussed above, the juvenile court determined that an award of permanent custody to FCCS was in the children's best interest upon a consideration of the R.C. 2151.414(D)(1) factors. "The best interest factors of R.C. 2151.414(D) are not only relevant to the question of permanent custody, but also provide appropriate guidance in determining whether a grant of legal custody is in the best interest of a child." *In re J.A.*, 9th Dist. Summit No. 24134, 2008-Ohio-3635, ¶ 9. "[I]f permanent custody to the agency is in the children's best interest, legal custody [to a relative] necessarily is not. * * *

- 9 -

Accordingly, the willingness of a relative to care for a child does not alter what the court must consider in determining permanent custody." *In re M.S.*, 8th Dist. Cuyahoga No. 101693, 2015-Ohio-1028. ¶ 11.

{¶ 33} Considering the foregoing, we find the juvenile court's decision was supported by clear and convincing evidence and was not against the manifest weight of the evidence. Therefore, the juvenile court did not err by granting permanent custody of M.G. to FCCS. Father's sole assignment of error is overruled.

{¶ 34} Judgment affirmed.

S. POWELL and BYRNE, JJ., concur.