[Cite as *In re M.G.*, 2022-Ohio-3104.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

|                     |   |                              |
|---------------------|---|------------------------------|
| IN RE:              | : |                              |
| M.G., et al.        | : | CASE NO. CA2022-05-007       |
|                     | : | O P I N I O N<br>9/6/2022    |
|                     | : |                              |
|                     | : |                              |
|                     | : |                              |

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. AND20200316, AND20190645, AND20190646, and AND20190647

Jess C. Weade, Fayette County Prosecuting Attorney, and Rachel S. Martin, Assistant Prosecuting Attorney, for appellee.

Steven H. Eckstein, for appellant.

**PIPER, J.**

{¶ 1}   Appellant, the father of the four minor children in this case, appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of the children to Fayette County Children Services ("FCCS"). For the following reasons, we affirm.

**I. Factual and Procedural Background**

{¶ 2}   The three oldest children came to the attention of FCCS in 2019, when the

oldest child was taken to the emergency room of the local hospital with a serious eye injury, and the hospital reported the injury. The agency learned that the children and their father and mother lived with their paternal grandfather in his home. A caseworker paid the family a visit and found the condition of the house "deplorable." There were trash and cockroaches throughout; the bathroom was "disgusting," having used toilet paper on the floor and feces on the wall; and Mother, Father, and the children were "basically secluded" to one bedroom. The parents first told the caseworker that the eye injury occurred when the child ran into a cabinet. But they later said that the grandfather had pushed the child into the cabinet. The three children were removed from the home, in October 2019, and placed in the temporary custody of FCCS.

{¶ 3} The following year, in July 2020, mother gave birth to the youngest child. The hospital contacted FCCS with concerns about the parents' ability to care for the baby. Hospital staff reported that the parents were struggling with basic parenting skills—feeding the baby, changing her clothes, and changing her diaper without assistance. FCCS learned that the parents were still living with the paternal grandfather and that the conditions of the home had not improved. The agency obtained temporary custody of the baby, and the child was removed from the hospital.

{¶ 4} All four children were adjudicated dependent and were placed together in the same foster home. A case plan for father and mother was prepared with the goal of reunification. Among other things, the case plan required them to become financially stable and to obtain appropriate housing. Almost two years passed, and while the parents completed many items in the case plan, they had failed to demonstrate any kind of financial stability and had failed to obtain appropriate housing. The parents were still living in the paternal grandfather's home with him.

{¶ 5} On October 19, 2021, FCCS filed motions for permanent custody of the

children.  A hearing on the motions was held in April 2022 at which the caseworker and the children's foster mother testified.  Father also testified.  Shortly before the hearing, the children's guardian ad litem ("GAL") filed an amended report with the trial court recommending that permanent custody be granted to FCCS.

{¶ 6}  On April 25, 2022, the trial court issued a decision granting FCCS permanent custody of the four children.  The court found that, in August 2021, Mother got a job at Speedway, where she still worked.  Father had been working but was not currently employed.  He was injured in 2019 and went on workers' compensation.  He started working again in October 2021, but the facility where he worked closed and he has not worked since.  The trial court found that neither Father nor Mother had a driver's license and that they relied mostly on the paternal grandfather to drive them to all their appointments.  The caseworker had referred them to Fayette County Transportation, but the parents had been reluctant to use the service because of concerns about reliability.  Based on the foster mother's testimony, the court noted that the children collectively have more than 20 medical appointments each month and that FCCS was concerned that the parents must rely on others for transportation.

{¶ 7}  But the trial court's primary concern was housing.  The court found that, despite having had almost two years, the parents had failed to find appropriate housing.  They were still living in the same home from which the children were removed and the home was still in a state unfit for the children.  Thus the trial court concluded that permanent custody to FCCS was in the children's best interest.

{¶ 8}  Father appealed the decision.[1]

**II. Analysis**

---

1.  Mother filed a separate appeal. (Case No. CA2022-05-006).

{¶ 9} The sole assignment of error alleges:

{¶ 10} THE TRIAL COURT ERRED IN FINDING CLEAR AND CONVINCING EVIDENCE THE BEST INTEREST OF THE CHILD REQUIRED PERMANENT CUSTODY WITH FCCS.

{¶ 11} Parents have a "fundamental right" "to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054 (2000). Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11, citing *Santosky v. Kramer*, 455 U.S. 745, 747-748, 102 S.Ct. 1388 (1982) ("Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence").

{¶ 12} "An appellate court's review of a juvenile court's decision granting permanent custody is generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. This court will therefore reverse a juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented." (Citations omitted.) *In re K.F.*, 12th Dist. Clermont No. CA2020-10-061, 2021-Ohio-1183, ¶ 54. In other words, even if the juvenile court's decision is supported by sufficient evidence, "an appellate court may nevertheless conclude that the judgment is against the manifest weight of the evidence." *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 19.

{¶ 13} In determining whether a juvenile court's permanent-custody decision is against the manifest weight of the evidence, an appellate court "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in

resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 to CA2018-08-091 and CA2018-08-095 to CA2018-08-097, 2019-Ohio-198, ¶ 16, quoting *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20.  We presume that the finder of fact weighed the evidence correctly—a presumption that "we are especially mindful of in custody cases."  *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231 and CA2014-11-236 to CA2014-11-238, 2015-Ohio-1343, ¶ 25.

{¶ 14} R.C. 2151.414(B)(1) establishes the requirements for granting permanent custody of a child to a children services agency.  Under this provision, a court may terminate parental rights and grant permanent custody if it finds that doing so is in the best interest of the child and one of five other requirements described in divisions (a) to (e) is met.  Division (d) requires a finding that the child has been in the temporary custody of the children services agency for at least 12 months of a consecutive 22-month period.

{¶ 15} In determining whether permanent custody is in a child's best interest, R.C. 2151.414(D)(1) requires a court to consider the five factors:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section

- 5 -

2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; [and]

(e) Whether any of the factors listed in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and child.

"The juvenile court may also consider any other factors it deems relevant to the child's best interest." *In re A.J.*, 12th Dist. Clermont No. CA2018-08-063, 2019-Ohio-593, ¶ 24.

{¶ 16} The parents had failed to obtain appropriate housing and continued to live with the paternal grandfather. The caseworker testified that she had visited the paternal grandfather's home a couple of weeks before the hearing and found that the conditions had not improved at all. The caseworker also testified about the many ways in which she tried to help the parents find housing. She noted that none of her other clients had had problems obtaining housing during the same two-and-a-half-year period. The caseworker further indicated that FCCS would not allow the children to be returned to the same home in which the grandfather was living due to the parent's allegations that he had abused the oldest child by shoving him and causing the eye injury. Also concerning to the court was the fact that the parents had to rely mostly on the paternal grandfather for transportation, because the children's foster mother had testified that the children had numerous medical appointments.

{¶ 17} Turning to the statutory best-interest factors, the trial court found that the children have continued to have interaction with both parents on a regular basis during family visits. The court said that the children are bonded with mother but said nothing about father. The court also found that the children are bonded to their foster parents. The children did not express their wishes, said the court, due to their ages. The court found the children have been in the temporary custody of FCCS for at least 12 months of a

consecutive 22-month period. Importantly, the juvenile court found that the children needed a legally secure permanent placement and that such a placement could not be achieved without a grant of permanent custody to FCCS. The court found that FCCS had made reasonable efforts toward reunification with the parents, or in the alternative, placement with a family member, but found that either would be contrary to the children's best interest. The court found that the parents have made no progress in securing a home suitable for the children. All four children are living together in the same foster home, where they have all been since their removal, the court found, and there were no concerns with the foster home. The court also noted that the foster mother had testified that they are interested in adopting all four children. Finally, the court found that none of the factors in R.C. 2151.414(E)(7) to (11) applies. After weighing the evidence, the trial court concluded that a grant of permanent custody to FCCS was in the children's best interest.

{¶ 18} Father argues that the trial court's decision is contrary to the manifest weight of the evidence. Specifically, he contends that his testimony on the condition of paternal grandfather's house conflicts with and outweighs the evidence citied by the trial court. Father testified about the difficulties that he had had finding appropriate housing, and he said that he was still actively looking. Father also testified that paternal grandfather's house was "getting cleaned up." He said that he had obtained spray for the bugs and had mopped the floors. He has been trying to keep the house clean, said Father, but it quickly reverts to the same condition that it was before the children's removal.

{¶ 19} Father's testimony does not conflict to any material degree with the other evidence, and Father has not convinced us that the trial court weighed the evidence incorrectly. "A parent is afforded a reasonable, not an indefinite, period to remedy the conditions causing the child's removal." *In re W.J.T.*, 12th Dist. Butler No. CA2019-03-047, 2019-Ohio-3051, ¶ 41. The evidence shows that the parents failed to complete their case

plan by failing to obtain appropriate housing. After two years, and despite assistance from the agency, the parents have been unable or unwilling to obtain their own separate housing. "[T]he key concern is not whether the parent has successfully completed the case plan, but whether the parent has substantially remedied the concerns that caused the child's removal from the parent's custody." *In re S.M.*, 12th Dist. Clermont No. CA2015-01-003, 2015-Ohio-2318, ¶ 24. After two years, the parents failed to remedy the conditions that caused the removal of their children. As little as two weeks before the hearing, the house was still in the filthy and squalid condition that it had been in when the children were removed two years before. The children could not return there. Father's testimony that the house was "getting cleaned up" is simply additional evidence that the juvenile court had to weigh in its decision.

### III. Conclusion

{¶ 20} We conclude that the juvenile court did not err by determining that it was in the children's best interest to grant permanent custody to FCCS. There is sufficient credible evidence to support the court's findings and its permanent-custody decision. There is no conflict in evidence, and the juvenile court's decision is not contrary to the manifest weight of the evidence. Father's sole assignment of error is overruled.

{¶ 21} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.